IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PEDRO RAMOS, :
: No. 4:10-CV-00681
Petitioner, :
: (Judge McClure)
v. : (Magistrate Judge Carlson)
:
RONNIE HOLT, et al., :
:
Respondents. :

**MEMORANDUM**

June 16, 2010

## I. INTRODUCTION

On March 29, 2010, petitioner Pedro Ramos, an inmate currently incarcerated at the Federal Prison Camp Canaan ("FPC-Canaan"), located in Waymart, Pennsylvania, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Rec. Doc. No. 1). Ramos named as respondents Warden Ronnie Holt and the Northeast Regional Office. Id. With his habeas petition, Ramos also filed a memorandum in support. (Rec. Doc. No. 2). In his petition, Ramos challenged the Bureau of Prisons' decision to recommend him for placement in a Residential Re-entry Center ("RRC") for 150 to 180 days, as opposed to the maximum period of time of twelve months, as allowed under 18 U.S.C. § 3624(c). Ramos also claimed that the Bureau of Prisons ("BOP") abused its discretion by

improperly considering his request for placement in an RRC and that the BOP misapplied its own policies and regulations. (Rec. Doc. No. 2 at 3-5).

## II. PROCEDURAL HISTORY

On April 20, 2010, the respondents filed their response to Ramos's habeas petition. (Rec. Doc. No. 5).[1] Respondents contended that the habeas petition should be denied because Ramos had failed to exhaust his administrative remedies. Id. at 7-8. In addition, respondents argued that the habeas petition should be denied on the merits because the BOP properly had considered Ramos for placement in an RRC and because he was not entitled to such placement for greater than 150 to 180 days. Id. at 9-15.

Magistrate Judge Carlson, on May 5, 2010, issued a Report and Recommendation in which he recommended that Ramos's habeas petition be denied. (Rec. Doc. No. 6). The magistrate judge concluded that, even though

---

[1] In their response, the respondents first noted that Ramos had named the Northeast Regional Office as a respondent, an entity that is an improper respondent in a § 2241 habeas action. (Rec. Doc. No. 5 at 1). In such a habeas action, the individual having custody over the petitioner, such as the warden of the institution in which the inmate is confined, is the only proper respondent. In this case, then, the only proper respondent is Warden Ronnie Holt. See Moles v. Holt, 2006 U.S. Dist. LEXIS 69996, at *1, n.1 (M.D. Pa. Sept. 27, 2006) (Conner, J.) (stating that "[t]he only proper respondent in a § 2241 habeas proceeding is the custodian of the prisoner, in this case Warden Ronnie Holt") (citing Rumsfeld v. Padilla, 542 U.S. 426, 434-35 (2004)).

Ramos had not fully completed the three-step grievance process utilized by the BOP,[2] Ramos had in fact sufficiently "completed all steps of the grievance process," as he had appealed to both the regional director and the BOP Central Office. (Rec. Doc. No. 6 at 14). Although the BOP Central Office rejected Ramos's appeal on procedural grounds and, therefore, did not reach the merits of Ramos's complaint, the magistrate judge concluded that this circumstance did not warrant denying Ramos's petition for failure to exhaust remedies. Id.

Upon considering the merits of Ramos's claims, the magistrate judge concluded that the petition should be denied. The magistrate judge noted that the petition raised no constitutional concerns and that any relief sought pursuant to the Second Chance Act of 2007, Pub. L. No. 110-199, must similarly fail, as a reading of 18 U.S.C. § 3624(c)(4)[3] indicates that the Act does not restrict the BOP's

---

[2] This process includes filing a formal written Administrative Remedy Request at the institutional level, 28 C.F.R. § 542.14(a), filing an appeal with the appropriate regional director, and filing a subsequent appeal with the general counsel at the BOP Central Office, 28 C.F.R. § 542.15(a).

[3] According to § 3624(c)(1), "[t]he Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility." In addition, "[n]othing in this subsection shall be construed to limit or restrict the authority of the Director of the Bureau of Prisons under section 3621 [18 USCS § 3621]." 18 U.S.C. § 3624(c)(1).

discretion concerning decisions on housing inmates under 18 U.S.C. § 3621.[4] The magistrate judge concluded "that the record of these proceedings shows that Ramos' request received individualized consideration at the prison." (Rec. Doc. No. 6 at 29). Further, Magistrate Judge Carlson indicated that "an assessment of the RRC placement decision in this case leads to the firm conviction that this

---

[4] Subsections 3621(a) and (b) provide as follows:

(a) Commitment to custody of Bureau of Prisons. A person who has been sentenced to a term of imprisonment pursuant to the provisions of subchapter D of chapter 227 [18 USCS §§ 3581 et seq.] shall be committed to the custody of the Bureau of Prisons until the expiration of the term imposed, or until earlier released for satisfactory behavior pursuant to the provisions of section 3624 [18 USCS § 3624].

(b) Place of imprisonment. The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering--
  (1) the resources of the facility contemplated;
  (2) the nature and circumstances of the offense;
  (3) the history and characteristics of the prisoner;
  (4) any statement by the court that imposed the sentence--
    (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
    (B) recommending a type of penal or correctional facility as appropriate; and
  (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.
18 U.S.C. § 3621(a)-(b).

decision represented an individualized assessment of the needs of this prisoner, which is all that the law requires, and all that an inmate can demand." Id. at 30. Therefore, the magistrate judge recommended that the habeas petition be denied and that no certificate of appealability should issue. Id. at 31.

On May 13, 2010, Ramos filed a letter with this court seeking an extension of time in which to file his reply to the government's response. (Rec. Doc. No. 7). However, at that point in time, the magistrate judge already had issued his Report and Recommendation. (Rec. Doc. No. 6). Although Ramos indicated that he would file a traverse with this court no later than May 15, 2010, he had yet to file any such document with the court by May 18, 2010. On that date, this court issued an order construing Ramos's letter as a motion seeking an extension of time in which to file objections to the Report and Recommendation and denying this motion as moot. (Rec. Doc. No. 8). The court informed Ramos that he had until May 24, 2010, to file any objections to the magistrate judge's Report and Recommendation. Id. at 3.

On May 19, 2010, the government filed an objection to the Report and Recommendation with a brief in support. (Rec. Doc. Nos. 9 and 10). The government objected to the magistrate judge's Report and Recommendation to the extent that the magistrate judge concluded that Ramos had exhausted the

administrative remedies process. (Rec. Doc. No. 10 at 9). On May 27, 2010, Ramos filed a letter with this court, docketed on May 28, 2010, in which he requested that the court provide him until Friday, May 28, 2010, for his objections to reach the court. (Rec. Doc. No. 11). We construed this letter as a motion for an extension of time in which to file objections to the Report and Recommendation. However, as of June 1, 2010, the date of our Order rejecting the Report and Recommendation to the extent that it addressed the merits of Ramos's habeas petition and granting Ramos's motion to extend to May 28, 2010 his deadline for filing any objections, the court had yet to receive any objections from Ramos. (Rec. Doc. No. 12).

The day after this court's June 1, 2010 Order, Ramos filed his objections. (Rec. Doc. No. 13). With these objections, Ramos, in essence, contends that the BOP relied upon impermissible factors in its decision to recommend him for placement in an RRC for only 150 to 180 days, as opposed to the maximum period of time of twelve months, as allowed under 18 U.S.C. § 3624(c). Ramos also contends that the BOP policy requiring regional director approval for RRC placement for a period of time longer than six months "creates a coercive chilling effect and [imposes] a 'Glass Ceiling' upon any consideration of RRC placement in excess of six months." (Rec. Doc. No. 13 at 7).

On June 14, 2010, Ramos filed a motion for reconsideration with this court. (Rec. Doc. No. 14). With this motion, Ramos asks that this court reconsider its June 1, 2010 Order denying his habeas petition, noting that the BOP Central Office finally denied his appeal on May 20, 2010.

**III. DISCUSSION**

A motion for reconsideration is a device of limited utility. Its purpose is to correct manifest errors of law or fact or to present newly discovered evidence. Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985). Accordingly, a party seeking reconsideration must demonstrate at least one of the following grounds prior to the court's altering, or amending, a standing judgment: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court entered judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice. Max's Seafood Café v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999) (citing North River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995)). A motion for reconsideration is appropriate in instances where the court has "patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." Rohrbach v. AT & T Nassau Metals Corp., 902 F.Supp. 523, 527

(M.D. Pa. 1995), vacated in part on other grounds on reconsideration, 915 F.Supp. 712 (M.D. Pa. 1996) (quoting Above the Belt, Inc. v. Mel Bohannan Roofing, Inc., 99 F.R.D. 99, 101 (E.D.Va.1983)). It may not be used as a means to reargue unsuccessful theories or argue new facts or issues that were not presented to the court in the context of the matter previously decided. Drysdale v. Woerth, 153 F. Supp. 2d 678, 682 (E.D. Pa. 2001). "Because federal courts have a strong interest in the finality of judgments, motions for reconsideration should be granted sparingly." Continental Cas. Co. v. Diversified Indus., Inc., 884 F.Supp. 937, 943 (E.D. Pa. 1995).

Even after considering the newly offered evidence that the BOP Central Office finally denied his appeal on May 20, 2010 and, therefore, that Ramos has exhausted his administrative remedies,[5] Ramos's habeas petition must still be

---

[5] The court notes that, while Ramos may have finally exhausted his administrative remedies as of May 20, 2010, he failed to exhaust his administrative remedies prior to instituting the present habeas action. See Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 760 (3d Cir. 1996) (concluding that "[f]ederal prisoners are ordinarily required to exhaust their administrative remedies before petitioning for a writ of habeas corpus pursuant to § 2241"). However, for the purposes of the present motion, we will consider Ramos as having exhausted his administrative remedies; Ramos has in fact exhausted the remedies available to him, and it would not further the goals supporting the exhaustion requirement to refuse to address, on the merits, Ramos's claims. See Moscato, 98 F.3d at 762.(listing the following goals: "(1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters

dismissed. It is true that several federal judges have looked favorably upon Ramos's argument that the BOP's policy requiring regional director approval for RRC placement for a period of time longer than six months creates a chilling effect on consideration of inmate RRC placements beyond a period of six months. See Krueger v. Martinez, 665 F. Supp. 2d 477 (M.D. Pa. 2009) (Rambo, J.); Strong v. Schultz, 599 F. Supp. 2d 556 (D.N.J. 2009) (concluding that "[t]he April 14, 2008, Memorandum impermissibly constrains staff's discretion to designate inmates to a CCC for a duration that will provide the greatest likelihood of successful reintegration into the community, contrary to § 3624(c)(6)(C)").[6] In Krueger, a decision from the Middle District of Pennsylvania, the court noted that, "by instructing staff that pre-release placement needs can usually be accommodated by a placement of six months or less, and by denying staff the discretion to recommend a placement longer than six months without advance written approval from the Regional Director, the memoranda constrain the discretion necessary to administrative autonomy").

---

[6] Section 3624(c)(6)(C) of Title 18 of the United States Code states that regulations issued by the director of the BOP must ensure that a community correctional facility placement "is of sufficient duration to provide the greatest likelihood of successful reintegration into the community."

make this determination unfettered by an arbitrary ceiling."[7] 665 F. Supp. 2d at 484. The court found that it could not determine if the BOP had decided that the inmate's RRC placment was made for the period of five to six months prior to his release date because of, or in spite of, the six-month presumptive language of the BOP memoranda. Therefore, the court directed "the BOP to reconsider the length of [the defendant's] RRC placement taking into consideration the requirements of the Second Chance Act and the factors outlined in 18 U.S.C. § 3621(b) and disregarding the limitations imposed by either the April 14, 2008 or November 14, 2008 memoranda."[8]

---

[7] The memoranda referred to by the courts in Krueger and Strong are an April 14, 2008 memorandum and a November 14, 2008 memorandum issued by the BOP that concern the Second Chance Act and RRCs. The April 14, 2008 Memorandum, a guidance memorandum, was drafted only a few days after the Second Chance Act came into effect and instructed staff that, while inmates are eligible for, at most, twelve months in an RRC, placement lasting longer than six months must be approved by the regional director. (Rec. Doc. No. 5, Exhibit 1, Attachment 1). The November 14, 2008 Memorandum, another guidance memorandum, concerned requests for placements in RRCs when an inmate has more than twelve months remaining on his or her sentence. See Krueger, 665 F. Supp. 2d at 480-81.

[8] The court in Krueger also noted that, "[w]hile it may literally be true that nothing in the April 14th or November 14th memoranda constrains the BOP's discretion, institutional inertia is a powerful force; by instructing staff that pre-release placement needs can usually be accommodated by a placement of six months or less, the BOP has functionally placed a lid on the discretion that it wants its staff to exercise." Id. at 483.

As the magistrate judge recognized in his thorough Report and Recommendation, this view is in the minority, with the vast majority of courts dealing with this issue concluding that the BOP requirement that placements in RRCs lasting longer than six months be approved by the regional director does not violate the statutory requirements of the Second Chance Act. (Rec. Doc. No. 6 at 23, n.4); see also McDonald v. Obama, 2010 U.S. Dist. LEXIS 37215 (M.D. Pa. Apr. 15, 2010) (adopting McDonald v. Obama, 2010 U.S. Dist. LEXIS 37596 (M.D. Pa. Mar. 15, 2010)); Wires v. Bledsoe, 2010 U.S. Dist. LEXIS 9094 (M.D. Pa. Feb. 3, 2010).[9] We agree with the magistrate judge that a real danger exists if

---

[9] In Miller v. Whitehead, 527 F.3d 752, 754 (8th Cir. 2008), the Court of Appeals for the Eighth Circuit addressed in part BOP Program Statement 7310.04 (Rec. Doc. No. 5, Exhibit 1, Attachment 2), which included a guideline that placement in an RRC beyond 180 days was "highly unusual" and would only be done "with extraordinary justification." The court indicated that the more recent BOP guidance issued in the wake of the Second Chance Act required that RRC placement beyond six months be approved by a regional director, in writing, and that "RRC needs can usually be accommodated by a placement of six months or less . . . ." Id. at 757, n.4. However, the court noted that it did not "understand this adjustment to supersede the provision of PS 7310.04 stating that 'placement beyond 180 days [is] highly unusual, and only possible with extraordinary justification.'" Id. The court held that "the requirement that an inmate make a stronger showing under the statutory factors to justify an extended RRC placement does not categorically remove the opportunity for the BOP to exercise its discretion with respect to an entire class of inmates." Instead, the court noted that the policy "reflects a determination that *ordinarily* a placement of more than 180 days is not appropriate under § 3621(b)." Id. The court held, though, that the policy did allow an inmate the opportunity to show that, in his particular case, the circumstances justified an extended placement. See id.

11

courts do not accord, with "due deference," BOP decisions concerning the implementation of statutory provisions that affect prison assignments. (Rec. Doc. No. 6 at 25). In addition, although the Second Chance Act provides for RRC placements of up to a year, it certainly does not require them. See 18 U.S.C. § 3621(b) (providing five factors to be considered by the BOP in determining a prisoner's place of imprisonment); 18 U.S.C. § 3624(c)(1) (stating that "[t]he Director of the Bureau of Prisons shall, *to the extent practicable*, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that . . . *may include a community correctional facility*") (emphasis added); 18 U.S.C. § 3624(c)(4) (noting that [n]othing in this subsection shall be construed to limit or restrict the authority of the Director of the Bureau of Prisons under section 3621"). In light of the above, we agree with the magistrate judge that, even if requests for RRC placement for a period of time greater than six months must be approved by a regional director, such a requirement does not mean that the BOP is barred from exercising its discretion concerning RRC placement. The BOP is free to, and in fact authorized by Congress to, exercise its discretion and place inmates in RRCs for up to twelve months. Therefore, we agree with the magistrate judge that the proper course here is to limit our review "to making an independent assessment

that the [BOP] engaged in an individualized determination of each inmate's placement, using the statutory factors set forth in the law." (Rec. Doc. No. 6 at 29) (citing Smith v. Sanders, 2009 U.S. Dist. LEXIS 82265 (C.D. Cal. July 31, 2009)).

Although Ramos contends that the BOP did not use the appropriate statutory factors in considering his RRC placement, we agree with the magistrate judge that the record reflects that Ramos did in fact receive individualized consideration as to his RRC placement. (Rec. Doc. No. 6 at 29-30). The record shows that the recommendation was based upon the five factors contained in § 3621(b) and that these factors were applied specifically to Ramos's case. (Rec. Doc. No. 5, Exhibit 1, Attachments 4 and 5). Ramos's Inmate Skills Development Plan further supports the conclusion that the decision reached by the BOP as to Ramos's placement in an RRC was one that was personally-tailored and based on individual consideration. (Rec. Doc. No. 5, Exhibit 1, Attachment 6).

Therefore, assuming arguendo that Ramos did in fact exhaust his administrative remedies we agree with the magistrate judge that the decision reached by the BOP as to Ramos's placement "represented an individualized assessment of the needs of the prisoner, which is all that the law requires, and all that an inmate can demand." (Rec. Doc. No. 6 at 30).

s/James F. McClure, Jr.
James F. McClure, Jr.
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PEDRO RAMOS, :
: No. 4:10-CV-00681
Petitioner, :
: (Judge McClure)
v. : (Magistrate Judge Carlson)
:
RONNIE HOLT, et al., :
:
Respondents. :

**ORDER**

June 16, 2010

For the reasons set forth in the accompanying memorandum, **IT IS HEREBY ORDERED THAT:**

1. Ramos's motion for reconsideration (Rec. Doc. No. 14) is granted, to the extent that he asks this court to consider his objections (Rec. Doc. No. 13) to the magistrate judge's Report and Recommendation, dated May 5, 2010 (Rec. Doc. No. 6).

2. Ramos's objections (Rec. Doc. No. 13) to the magistrate judge's Report and Recommendation (Rec. Doc. No. 6) are **OVERRULED**.

3. The order of June 1, 2010 is reconfirmed, to the extent that Ramos's petition for writ of habeas corpus (Rec. Doc. No. 1) is **DISMISSED**. The dismissal of Ramos's petition is now based solely on the merits

of the petition and not on failure to exhaust administrative remedies.


                                  <u>s/James F. McClure, Jr.</u>
                                  James F. McClure, Jr.
                                  United States District Judg